**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Evergreen Telemetry LLC,<br><br>     Plaintiff,<br><br>vs.<br><br>Fieldpiece Instruments Incorporated,<br><br>     Defendant. | No. CV-24-02814-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss for Improper Venue (Doc. 13), Plaintiff's Response (Doc. 19), and Defendant's Reply (Doc. 20). For the following reasons, the Motion will be denied.[1]

**I. BACKGROUND**

On October 17, 2024, Plaintiff Evergreen Telemetry LLC ("Evergreen") initiated this suit against Defendant Fieldpiece Instruments, Inc. ("Fieldpiece"), alleging three claims of patent infringement in violation of 35 U.S.C. § 271(a)–(c). (Doc. 1 ¶¶ 104–127). Plaintiff owns three patents relating to wireless heating, ventilation, and air-conditioning ("HVAC") tools and systems—the '857 Patent, the '466 Patent, and the '798 Patent (collectively, the "Asserted Patents"). (*Id.* at ¶ 12). It alleges that since 2015, Defendant has been making, using, selling and/or offering its own wireless HVAC testing system that

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

infringes upon Plaintiff's patents ("Accused Products") in the United States without authorization. (*Id*. at ¶ 20).

On April 9, 2025, Defendant filed the present Motion to Dismiss for Improper Venue arguing that Fieldpiece does not reside in or have a "regular and established place of business" in the District of Arizona, and that Evergreen simply seeks to avail itself of its home forum. (Doc. 13 at 2–3). Plaintiff acknowledges that Fieldpiece is a Delaware corporation, with a formal place of business in Orange, California. (*Id*. at ¶ 35). It alleges, however, that Fieldpiece derives substantial revenue from the District of Arizona, selling the Accused Products at over 100 distributors statewide. (*Id*. at ¶¶ 40, 44). Plaintiff further alleges that a "Fieldpiece Sales Representative" lives in and maintains a home-based office in Arizona, stores work-related materials in their home-based office, accepts orders, makes business decisions, solicits customers, engages in technician training, and takes part in industry and community events on behalf of Defendant. (*Id*. at ¶ 53). Defendant acknowledges that after using third-party sales representatives for many years, it hired a full-time Arizona-based sales representative in November 2022, who after leaving the company in October 2024, was replaced by the current Arizona-based employee. (Doc. 19-2 at 9–10).

**II.    LEGAL STANDARD**

A party may file a motion to dismiss for lack of venue pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3). Fed. R. Civ. P. 12(b)(3). In patent cases, 28 U.S.C. § 1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). Additionally, "Federal Circuit law, rather than regional circuit law, governs [the court's] analysis of what § 1400(b) requires". *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). "[T]he burden of establishing proper venue [is] on the Plaintiff." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018). In deciding whether venue is proper on a Rule 12(b)(3) motion, "the pleadings need not be accepted as

true, and the court may consider facts outside of the pleadings." *Infinity Cube Ltd. v. Mangolytics, Inc.*, No. 22-CV-547-RSH-AGS, 2023 WL 6217359, at *2 (S.D. Cal. Feb. 22, 2023) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004)).

Venue lies "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For purposes of § 1400(b), a domestic corporation "resides" only in its state of incorporation. *TC Heartland LLC*, 581 U.S. at 268. Alternatively, for a defendant to have a "regular and established place of business" within a district, three requirements must be satisfied: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d at 1360. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id*.

### III. DISCUSSION

The parties' primary dispute is whether Defendant has a "regular and established place of business" in the District of Arizona under the three *Cray* requirements.[2] Therefore, this Court will limit its discussion to the *Cray* requirements.

#### A. "Regular and Established Place of Business" under 28 U.S.C. § 1400(b)

##### a. Physical Place

"While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' [] there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *In re Cray Inc.*, 871 F.3d at 1362 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)); *see In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020) (rejecting the argument that a "physical place of business" should focus on real property owned or leased by a corporation).

Defendant argues that the home of an alleged salesperson in Arizona does not

---

[2] Defendant and Plaintiff both acknowledge that Fieldpiece does not reside in Arizona and is incorporated in Delaware. (Doc. 13 at 3); (Doc. 1 ¶ 35). There is also no dispute between the parties as to whether the alleged infringement occurred in the District of Arizona.

constitute a "physical place" of business because "Fieldpiece's sales representatives are responsible for a variety of territories, of which Arizona is only one." (Doc. 13 at 5).

Plaintiff responds that when it filed its Complaint, Defendant employed a sales representative in Arizona "who was responsible for managing sales, distributor relationships, field work, and on-site training for customers in Arizona." (Doc. 19 at 4). Plaintiff points to deposition testimony where Defendant admits that it provided its Arizona sales representatives with a company-branded vehicle and shipped products and equipment, literature, and other merchandising items to their homes. (*Id.* at 5). Allegedly, these products were to be stored and distributed from the homes of the sales representatives. (*Id.*)

Defendant replies that while the sales representatives live in Arizona, they perform minimal, sporadic administrative work in their physical homes. (Doc. 20 at 8). Rather, most of their work involves "visiting distributor locations, demonstrating products, providing training to distributors employees on Fieldpiece's products." (*Id.*) Defendant then, after admitting to shipping and storing products in the representatives' homes, argues that it is not using the homes as a de facto warehouse for inventory. (*Id.*) Rather, the employees are merely storing products necessary "to perform their job at *other locations,*" and such storage does not constitute a "physical place" of business. (*Id.* (emphasis in original)).

Notably, Fieldpiece does not maintain any physical offices, stores, or warehouses in the District of Arizona. (Doc. 13 at 4). Because there are no physical offices, stores, or warehouses, *all* demonstration products, promotional materials, and merchandise are shipped directly to the employees' homes. (Doc. 19-2 at 15). Defendant emphasizes in its Reply that the storage of *product inventory for sale* would constitute a "physical place" by virtue of a de facto warehouse, but its storage of *demonstration products* or promotional materials would not. (Doc. 20 at 8). Defendant cites *C.R. Bard, Inc. v. Smiths Med. ASD, Inc*., No. 212CV00036RJSDAO, 2020 WL 6710425 at *6 (D. Utah Nov. 16, 2020), and *Herbert v. Diagnostic Prods. Corp*., No. 85 CIV. 0856, 1986 WL 6781 (S.D.N.Y. June 10, 1986) to support this proposition. (Doc. 20 at 10).

While these cases provide helpful insight to the analysis, this Court finds neither determinative to the present case. *Herbert* is distinguishable because there "the [employees'] homes [are] only involved in storing some promotional literature and customer files and handling telephone calls." 1986 WL 6781 at *4. *C.R. Bard, Inc.* is a closer comparison; in that case, the court noted that "[a]n important consideration is whether the stored products were ever directly sold or distributed to customers." 2020 WL 6710425 at *11. But *C.R. Bard, Inc.* is factually distinguishable because that case involved sixteen sales representatives—of which only two lived in the disputed district—who were responsible for servicing five different states. *Id*. at *5. Emphasizing that "no one fact is controlling" and "[c]onsidering the record as a whole," the court used the "nature of the product" as only one of several factors to determine venue was improper. *Id*. at *13.

This Court finds *RegenLab USA LLC v. Estar Techs. Ltd.*, 335 F. Supp. 3d 526 (S.D.N.Y. 2018), to be a more persuasive comparison. In that case, the employer shipped "sales kits" to its employees' homes, which contained demonstration products and literature to use during sales demonstrations. *Id*. at 552. The employer made the same "product inventory for sale vs. demonstration product" argument that Defendant puts forth. *Id*. The court rejected that argument, finding that "[t]he employees did not merely possess those products—their use in New York was part of each employee's job description . . . the employee uses the products stored in their home office to conduct demonstrations." *Id*.

Here, it is true that Fieldpiece employees do not sell the products that are shipped to and stored in their homes. (Doc. 20 at 11). But unlike *Herbert*, the employees do not merely possess promotional literature or products. Instead, like the employees in *RegenLab USA LLC*, Fieldpiece employees use the products they store at their homes to "conduct business at third party locations." (*Id*.)  Therefore, on balance, the Court finds that the "physical place" requirement is met because the products stored in Defendant's employees' homes are used to fulfill their job duties at locations throughout Arizona.

### b. Regular and Established Place of Business

"To satisfy the 'regular and established' requirement, a business may be 'regular' if

it operates in a steady, uniform, orderly, and methodical manner, and 'established' if it is not transient but instead settled certainly or fixed permanently." *IOT Innovations LLC v. Monitronics Int'l, Inc.*, No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *3 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023) (citing *In re Cray Inc.*, 871 F.3d at 1362). *See also Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) ("A 'regular place of business' is, obviously, a place where such business is carried on 'regularly' and not merely temporarily, or for some special work or particular transaction.").

Defendant cites *Cray* for its mistaken proposition that its employees' homes *cannot* be considered "regular and established" places of business because Fieldpiece employees "are under no obligation to reside in Arizona and can freely move out of the District" without approval. (Doc. 13 at 5). Plaintiff responds that Defendant's employees' homes "have uniformly served as the operational bases for Fieldpiece's sales, training, and marketing activities in this District since at least November 2022." (Doc. 19 at 5). Plaintiff further argues that Defendant's business operates in Arizona with steady regularity, in that the employees' job descriptions include "building relationships with store associates, providing sales training, [and] optimizing the merchandising at the point of purchase." (Doc. 19 at 6). Plaintiff also points to Defendant's public list of distributors, which lists at least 100 locations in Arizona compared to the 30 in Nevada and 15 in California. (*Id.*)

The Court finds the "regular and established" place of business requirement to be met because of the steady, uniform, orderly, and methodical business that both starts and finishes at the sales representatives' homes, with visits to distributors in between. First, Defendant's statement of law regarding an employee moving out of the district under *Cray* is incorrect. Defendant's assertion adds the restrictive language of "cannot" and omits the Federal Circuit's analysis that an employee's ability to freely move out of district "would *cut against* the employee's home being considered a place of business of the defendant." *In re Cray Inc.*, 871 F.3d at 1363 (emphasis added). Additionally, as discussed below, courts consider an employee's obligation to live in a certain state when analyzing the "place

6

of the defendant" requirement, not the "regular and established" requirement. *See IOT Innovations LLC*, 2023 WL 6318049 at *3. Thus, the Court finds Defendant's employees' ability to move is not dispositive on this factor.

Here, Defendant has more than 100 distributors in the District of Arizona. (Doc. 19 at 6). Since at least November 2022, Fieldpiece has had at least one sales representative with a physical home in Arizona. (Doc 19-2 at 9). Thus, every night for the past several years, Fieldpiece sales representatives have stored more than $11,000 worth of demonstration products and company-leased, Fieldpiece-branded vehicles at their homes in the District of Arizona. *See* (Doc. 19 at 9–10 (listing the Fieldpiece demonstration products and their estimated values)); *IOT Innovations LLC*, 2023 WL 6318049, at *4 (finding venue proper because, among many other factors, "the service technicians store a leased vehicle and tens of thousands of dollars of Brinks Home equipment at their homes"). Further, the representatives travel from their homes—using their leased, company vehicles—to over 100 distributors in the District of Arizona to demonstrate and pitch their products. Fieldpiece's business—starting and ending at the sales representatives' homes in Arizona each day since late 2022—has operated in a "steady, uniform, orderly, methodical" and non-transient manner. *See Remington Rand Bus. Serv. v. Acme Card Sys. Co.*, 71 F.2d 628, 629 (4th Cir. 1934) (holding a five-year continuous presence demonstrates that business was established for purposes of venue); *c.f. Knapp–Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) (holding that a business that demonstrated its products twice a year at a trade show did not have an established presence). Therefore, this Court finds that the employees' homes meet the requirement of a "regular and established" place of business in the District of Arizona.

### c. Place of the Defendant

"As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee . . . Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *In re Cray Inc.*, 871 F.3d at 1363 (emphasis in original). "Another consideration might be

7

whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place." *Id*. "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id*.

Defendant argues that it does not own or lease its employees' homes, store inventory or conduct demonstrations there, list the home addresses as places of business, or require employees to put Fieldpiece's name on or near their homes. (Doc. 13 at 6). Defendant further claims that it does not require its sales representatives to live in Arizona, nor does it "condition any support or employment on the maintenance of such a location". (*Id.*)

Plaintiff responds by arguing that Defendant (1) requires its employees to live in Arizona, (2) stores products and materials at employees' homes, and (3) displays its brand name at the employee's homes. (Doc. 19 at 7–13). First, Plaintiff argues that "efficiency and demand require Fieldpiece's [representatives] live in Arizona, as opposed to Nevada or California" because over two-thirds of the distributors are in Arizona. (*Id.* at 7). Plaintiff then provides the Court with a Fieldpiece LinkedIn job posting for a "Territory Sales Representative" position servicing Arizona and Nevada that explicitly states, "[m]ust be located in the Phoenix area." (*Id.* at 8). Second, Plaintiff provides the Court with a detailed list of demonstration samples stored at the employees' homes that roughly totals more than $11,000, in addition to assorted "brochures/catalogs/signage," merchandising setups, and promotional items, including hundreds of branded keychains and screwdrivers. (*Id.* at 9–11). Plaintiff also notes that the representatives store a "Fieldpiece-branded vehicle" at their homes. (*Id.* at 11). Third, Plaintiff provides the Court with a photograph of the "Fieldpiece-branded vehicle" displayed outside of what is alleged to be an employee's home, arguing that Fieldpiece clearly displays its logo outside of employees' homes. (*Id.* at 13).

Defendant replies to each of the arguments in turn. First, Defendant acknowledges that the language of the advertisement "suggests" that the candidate must live in Phoenix. (Doc. 20 at 13). It claims, however, that it would have considered applicants from Nevada

8

or California, and that "internal job descriptions" do not require candidates to live in a particular state. (*Id*.). Second, Defendant argues that there is no evidence to prove that it requires employees to store samples, materials, or other products for sale or distribution from their private homes. (*Id.* at 13–14). Rather, Defendant claims that the representatives could store all the materials "in their truck." (*Id.* at 14). Third, Defendant argues that a Fieldpiece-branded truck parked on the street of an employee's home cannot reasonably be compared to a permanent sign affixed to the residence. (*Id.* at 15).

This Court finds the "place of the defendant" requirement is met because Fieldpiece's "business specifically depend[s] on employees being physically present" in Arizona and it "affirmatively acted to make permanent operations within that district to service its customers there." *In re Cray Inc.*, 871 F.3d at 1365 (citing *In re Cordis Corp.*, 769 F.2d 733). Factors on this requirement cut both ways. On the one hand, Defendant does not own, lease, or make any contributions directly towards the sales representatives' homes. It also claims, contrary to its public job posting, that the territory sales representatives are not required to live in Arizona. (Doc. 19-2 at 21). Nor does Defendant publish the addresses of its sales representatives' homes as places of business. Concerning the Fieldpiece-branded vehicle, the Court is not persuaded that the vehicle's presence outside of a private home indicates that *the home* is a "place of the Defendant."

On the other hand, Defendant recently posted a job opening on LinkedIn for the position of Territory Sales Representative, and the advertisement image explicitly states: "Must be located in the Phoenix area." (Doc. 19 at 8). Eliminating any doubt that the words in the image were posted in error, when the job posting is expanded it reads "[y]ou must be based in the Phoenix metro area and open to travel to stores across Arizona and Nevada (about 35% overnight)." (Doc 19-4 at 46). Even if employment was not conditioned on living in Arizona, it would be extremely difficult for the sales representative to fulfill their on-site job duties at over 100 locations in Arizona while living in Nevada or California.

To that end, this case differs from *In re Cray Inc.*, where "no evidence show[ed] that [the defendant] believed a location within the [district] to be important to the business

performed," or that the defendant "had any intention to maintain some place of business in that district." *RegenLab USA LLC*, 335 F. Supp. 3d at 552 (quoting *In re Cray Inc.*, 871 F.3d at 1365). In that case, the court ultimately found that the homes were not the "place of the defendant." *In re Cray Inc.,* 871 F.3d at 1366. Instead, here, the importance of having an employee in Arizona is seen through Fieldpiece's decision to hire an Arizona-based sales representative in November 2022, rather than continuing to use an independent sales agency. (Doc. 19-2 at 10). Further, when the first sales representative left Fieldpiece in October 2024, it hired another Arizona-based sales representative to fill the position. (*Id.* at 10). Clearly, Fieldpiece saw *some* value in having one of their own employees live and maintain a home in Arizona, as they chose not to return to the independent sales agency. Therefore, this Court finds that the sales representatives' Arizona homes are a "place of the defendant," because without a physical presence, Fieldpiece would be hard-pressed to service its more than 100 Arizona distributors.[3]

### IV.  CONCLUSION

No one fact is dispositive in determining venue. *See In re Cray*, 871 F.3d at 1366. Considering all the facts together, this Court finds that Plaintiff has met its burden in establishing Defendant has a regular and established place of business in the District of Arizona. Thus, venue is proper under 28 U.S.C. § 1400(b).

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 13) is **denied**.

Dated this 1st day of August, 2025.

> Honorable Steven P. Logan
> United States District Judge

---

[3] Because this Court finds that Plaintiff has met its burden as to the three *Cray* requirements through its employees' homes, discussion regarding whether the third-party distributors are regular and established places of business of Fieldpiece is unnecessary. (*See generally* Doc. 13 at 7–10).